**SO ORDERED.**

**SIGNED this 27 day of January, 2011.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

IN RE:

| | |
|---|---|
| PAUL ROBERT CANOVALI, JR. | CHAPTER 11 |
| BRANDI M. CANOVALI, | CASE NO. 09-05342-8-RDD |
| DEBTORS | |

**ORDER DENYING MOTION FOR
RELIEF FROM ORDER CONFIRMING PLAN**

Pending before the Court is the Motion for Relief from Order Confirming Plan[1] filed by Bank of America, N.A. ("BOA") on November 16, 2010 (the "Motion"), the Response to Motion for Relief from Order Confirming Plan filed by Houseman Custom Homes, Inc. ("Houseman") on November 24, 2010 (the "Houseman Response"), and the Objection to Motion [to] Set Aside Order Confirming Plan filed by Paul Robert Canovali Jr. and Brandi M. Canovali (the "Debtors") on November 24, 2010 (the "Debtors' Objection").  The Court conducted a hearing on December 13, 2010 in Wilson, North Carolina to consider the merits of the Motion.

---

[1] Bank of America, N.A. filed a Memorandum in Support of Motion for Relief from Order Confirming Plan on November 16, 2010. Subsequently, on November 22, 2010, Bank of America, N.A. filed its Amended and Restated Memorandum in Support of Motion for Relief from Order Confirming Plan. The Court considered each of these memoranda, the Motion, the Houseman Response, and the Debtors' Objection, the arguments of counsel, and the evidence presented at the hearing in reaching its decision.

Pursuant to its Motion, BOA requests the Court to grant relief to BOA by modifying or amending the Confirmation Order, hereinafter defined on page 8, such that BOA would be paid in full with respect to both its first and second liens against certain real property owned by the Debtors. The Debtors oppose the Motion and request that the Court grant an order compelling BOA to comply with the terms of the Confirmation Order.

## FACTUAL BACKGROUND

On June 26, 2009, the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

With their petition, the Debtors filed their Schedules, Statement of Financial Affairs, Exhibit D - Individual Debtor's Statement of Compliance with Credit Counseling Requirement for each Debtor, Credit Counseling Certifications, List of Creditors Holding 20 Largest Unsecured Claims, Summary of Schedules, Statistical Summary of Certain Liabilities and Related Data - Form 6, Disclosure of Compensation of Attorney for Debtors, Notice of Consumer Debtor(s) under § 342(b) of the Bankruptcy Code - Form 201, and their Verification of Creditor Matrix with the accompanying matrix.

The Debtors listed BOA on the first line of the List of Creditors Holding 20 Largest Unsecured Claims and identified that $368,000.00 of the claim was unsecured. More specifically, the Debtors note that $1,063,000.00 is secured and there is a senior lien of $988,000.00. The Debtors disclose that the nature of the BOA claim is related to their residence at 4909 Wynneford Way, Raleigh, North Carolina (the "Residence").[2]

---

[2] In addition to the claims held by BOA related to the residence, BOA was also listed as an unsecured creditor in connection with a $16,000.00 credit card debt on the List of Creditors Holding 20 Largest Unsecured Claims and on Schedule F.

Schedule A discloses that the Residence is jointly owned by the Debtors and is titled as tenants by the entirety. The Debtors assert that the fair market value of the Residence is $1,063,000.00 and that the amount of the secured claim is $1,356,000.00

Schedule C-1 lists BOA as a claimant with respect to a first deed of trust in the amount of $988,000.00 and a second deed of trust in the amount of $368,000.00.

Schedule D[3] shows BOA with a first deed of trust with respect to the Residence in the amount of $988,000.00 and notes that there is no unsecured claim as to this lien since the value of the Residence is listed at $1,063,000.00. On the second line, the Debtors listed BOA as having a second deed of trust as to the Residence with a claim in the amount of $368,000.00. The Debtors stated that $293,000.00 of this claim is unsecured.

In addition, on the Statement of Financial Affairs, the Debtors listed two separate entries describing payments made to BOA within the 90 days of filing their petition. The Debtors disclosed that $21,900.00 was paid to BOA with a balance of $988,000.00. The second entry showed that $7,500.00 was paid to BOA with an amount of $368,000.00 still outstanding.

On August 21, 2009, the Debtors filed their Plan of Reorganization (the "Proposed Plan") and their Disclosure Statement. Pursuant to the Proposed Plan, the Debtors classified the claims of BOA secured by the Residence in Class 4. Class 4 provided that BOA was an impaired creditor. More specifically, the Proposed Plan stated:

---

[3] BOA was also listed on the Schedules in connection with its claims as to the real property located at 16218 Marbry Mill Road, Midlothian, Virginia. This claim is separate and apart from the claims against the Residence at issue in the Motion. The Debtors disclosed on their Statement of Financial Affairs that the notes secured by a deed of trust on this property were foreclosed upon by Wachovia Bank, N.A., the first lien holder, on February 19, 2009.

> This class consists of *two notes* secured by *two deeds of trust* against the Debtors' property at 4909 Wynneford Way, Raleigh, NC. Due to market conditions and current valuations, the Debtors value this property at $1,000,000. BOA's *claims* will be *paid as one claim*, with its face value of $1,000,000 payable over a term of 30 years at 5%. Any remaining indebtedness on these *claims* due to this treatment shall be dealt with as an unsecured claim in Class 8 of the Plan.

emphasis added.

The Proposed Plan provided that all general unsecured claims were included in Class 8. The proposed budget, included as an exhibit to the Disclosure Statement, provided that the Class 4 claimant, BOA, would receive monthly distributions in the amount of $5,368.22. Class 8 unsecured creditors were to receive quarterly payments of $1,270.47 which would be distributed on a pro rata basis.

On August 24, 2009, the Court entered its Order Conditionally Approving the Disclosure Statement, Fixing Last Day to File Objections to the Disclosure Statement, Fixing Last Day to File Acceptances/Rejections of the Plan, Setting Hearing on Confirmation of the Plan, Directing that Ballots be Filed, and Directing the Plan Proponent to File Report on Ballots ("Order Conditionally Approving Disclosure Statement"). A hearing to consider confirmation of the Proposed Plan was set for October 15, 2009 (the "Confirmation Hearing").

On August 26, 2009, counsel for the Debtors filed a Certificate of Service stating that on August 25, 2009 he served copies of the Order Conditionally Approving Disclosure Statement, the Debtors' Disclosure Statement, Debtors' Plan of Reorganization and, as necessary, a ballot to certain parties in interest, including BOA. BOA was served to the attention of its (1) Managing Agent at P.O. Box 21848, Greensboro, North Carolina 27420 and (2) Managing Agent at P.O. Box 15019, Wilmington, Delaware 19886.

On October 8, 2009, the Bankruptcy Administrator filed a response to the Proposed Plan. With respect to Class 4 claims, the Bankruptcy Administrator noted that the Debtors' proposed to cramdown the value of their Residence and that such a provision is not consistent with Section 1123(b)(5) of the Bankruptcy Code. However, the Bankruptcy Administrator further stated that the Proposed Plan was feasible if the Class 4 creditor accepts its treatment. If BOA objects to its treatment, the Bankruptcy Administrator believed that the Proposed Plan was not feasible.

On December 3, 2009, the Debtors filed their Ballot Report. The Ballot Report describes the BOA ballot as follows:

> **Class 4: Secured Claims of Bank of America**. This class is impaired. This class consists of two notes both secured by the Raleigh property. **BOA has balloted against the Plan.**

emphasis added.

On December 3, 2009, as a result of Mrs. Canovali delivering a baby, the Court issued a Notice of Continued Hearing rescheduling the Confirmation Hearing for January 7, 2010 at 1:00 p.m. in Fayetteville, North Carolina. Notice of the continued Confirmation Hearing was sent by the Court on December 3, 2009.

On December 16, 2009, Angel R. Gordon, Esquire, docketed a Notice of Appearance on behalf of BOA.

On that same day, approximately two (2) weeks after the Ballot Report was filed by the Debtors, and approximately four and a half (4.5) months after the Proposed Plan was filed, counsel for BOA filed a proof of claim, listed on the claims register as Claim No. 20-1, asserting that it had a secured claim in the amount of $977,918.36 ("POC 20"). Furthermore, BOA noted that the interest rate in connection with that claim was 6.500% and that its interest was secured by a

"Security Deed." BOA also listed "$0" as the amount of its claim that was unsecured even though it provided that the value of the property was "[u]nknown."

On December 29, 2009, approximately five (5) months after the Proposed Plan and Disclosure Statement were filed, BOA filed its Objection to Confirmation. Paragraph 3 of its Objection to Confirmation provides that:

> [S]ums due to [BOA] under the ***Promissory Notes***, which are secured by ***Deeds of trust***, ***aggregate*** approximately $977,918.36, together with accrued interest and fees and costs as allowed by law. Upon information and belief, the Subject Property is worth at least $1,500,000. Further, the contractual rate of interest is 6.50%.

emphasis added.

Although the Objection to Confirmation uses capitalized terms to refer to the "Promissory Notes" and capitalized the first term in "Deeds of trust," the Objection does not specifically define these terms or provide any additional information as to what documents are being referenced. However, the notes and deeds of trust described used plural language, suggesting that BOA and counsel knew more than one note and/or deed of trust in Class 4 existed.

On January 7, 2010, the Court conducted the Confirmation Hearing. Counsel for the Debtors recognized that the Court might have concerns with the proposed cramdown treatment as to Class 4 since this class holds a security interest in the Residence. Because of this possible concern, counsel stated that he actively sought acceptance of the Proposed Plan from BOA with respect to its Class 4 claims. He stated that he ultimately obtained a late ballot voting against the Proposed Plan which was consistent with BOA's Objection to Confirmation. However, counsel informed the Court that he reached a consent order with counsel for BOA in connection with its Objection to Confirmation as to Class 4. More specifically, the agreement provided that the aggregate claims of BOA classified in Class 4 shall be in the principal amount of $977,918.36, the amount which was reflected on its

6

recently filed proof of claim. Counsel stated that on the morning of the Confirmation Hearing, a consent order was sent to the Court for approval. He stated that he was authorized by counsel for BOA that if the consent order met the Court's approval, BOA would withdraw its Objection to Confirmation.

After further negotiations with the Bankruptcy Administrator, the Debtors increased the proposed dividend and modified the treatment to Class 8 - Unsecured Creditors. Based on the consent agreement resolving the BOA Objection to Confirmation, the testimony of the male debtor, the recommendation of the Bankruptcy Administrator, and the Debtors' compliance with the Bankruptcy Code, the Proposed Plan with the amendments to Class 8 was confirmed at the conclusion of the hearing (the "Confirmed Plan").

The Consent Order Regarding Class 4 (the "Consent Order") was docketed on January 7, 2010 documenting the terms of the settlement between BOA and the Debtors. Electronic notice of docketing of the Consent Order was sent to Angel R. Gordon, on behalf of BOA, at ecf_nc@msplaw.com and lori.thompson@mrdefault.com at 12:02 P.M. on January 7, 2010.

The Consent Order agreed to by the parties provides in paragraph 4:

> That the Debtors concede and the Parties agree that the amount due BOA under Class 4 is an unpaid principal balance of $977,918.36, together with accrued interest, fees, and costs as allowed under the terms of the loan documents and that BOA shall be paid in full.

Furthermore, the Consent Order states in paragraph 6:

> That in exchange for the Debtor modifying BOA's treatment under the Plan as set forth in this order and the Court's approval and confirmation of such, BOA withdraws its objection to the Plan.

On January 12, 2010, the Court docketed the Order Confirming Plan (the "Confirmation Order") confirming the Proposed Plan subject to certain clarifications and amendments. As to Class 4 claimants, the Confirmation Order provides:

> Consistent with the Consent Order entered into by Bank of America, N.A. and the Debtors and approved at the Confirmation Hearing on 7 January 20[10], the sole amount owing to Bank of America, N.A. under Class 4 is $977,918.36, together with accrued interest, fees and costs as allowed under the terms of the loan documents, and this amount shall be repaid with interest accruing at the rate of 6.5%, amortized and repaid over 30 years.

Electronic notice of docketing of the Confirmation Order was sent to Angel R. Gordon, on behalf of BOA, at ecf_nc@msplaw.com and lori.thompson@mrdefault.com at 12:30 p.m. on January 12, 2010.

Thereafter, the Debtors filed a Motion to Enforce Confirmation Order on May 12, 2010 requesting that the Court enter an order compelling BOA[4] to comply with the terms of the Confirmation Order ("the "Motion to Compel").

BOA filed its Objection to the Debtors' Motion to Enforce Confirmation Order on May 28, 2010 whereby it objected to the Motion to Compel and requested a hearing.

Stemming from the Debtors' Motion to Compel and the Debtors' request that BOA cancel its second deed of trust, BOA filed the instant Motion requesting relief from the Confirmation Order.

---

[4] The Motion to Compel sought relief that would require BOA and SunTrust Bank, N.A. to comply with the Terms of the Confirmation. However, there are portions of the Motion to Compel which are not relevant as to BOA, as they relate to allegations against SunTrust Bank N.A.

8

## DISCUSSION

Federal Rule of Civil Procedure 60(b)(1), as incorporated into the Federal Rules of Bankruptcy Procedure by Bankruptcy Rule 9024, provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for ...mistake, inadvertence, surprise, or excusable neglect." Furthermore, subsection (6) of the Federal Rule of Civil Procedure 60(b) provides that relief may also be granted for "any other reason that justifies relief."

The parties agree that an order confirming a plan of reorganization is a final order or judgment for the purposes of F.R.C.P. 60 and Bankruptcy Rule 9024. *See also United Student Aid Funds v. Espinosa*, ___ U.S. ___, 130 S.Ct. 1367, 1376 (2010).

The Fourth Circuit delineated three requirements a party must satisfy in order to obtain relief under Federal Rule 60(b). *Park Corp. v. Lexington Ins. Co.,* 812 F.2d 894, 896 (4th Cir. 1987) (citing *Werner v. Carbo*, 731 F.2d 204, 206-07 (4th Cir. 1984)); *Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir. 1979). First, the movant must show that the motion for relief pursuant to Rule 60 is timely. *Park Corp.*, 812 F.2d at 896. Second, the movant must show that a meritorious defense to the matter exists. *Id.* And, third, the movant must show that the opposing party would not be unfairly prejudiced by granting the proposed relief. *Id.* (considering relief under Rule 60(b) in the context of a default judgment). Only after meeting these requirements is relief available pursuant to Rule 60(b).

BOA requests that this Court modify its Confirmation Order such that its claims are treated as secured and both deeds of trust are paid in full.

BOA argues that granting it relief pursuant to Federal Rule of Civil Procedure 60(b) is timely as its Motion was filed within one year and, based on the circumstances of this case, its filing was within a reasonable time.[5]

BOA argues that it has a "meritorious defense" in support of its request for modification of the Confirmation Order. Relying on 11 U.S.C. § 1123(b)(5), BOA states that its claims, which were properly secured by the two deeds of trust on the Residence, cannot be modified. The parties do not dispute that some equity may exist in the Residence without the attachment of the second deed of trust.[6] Therefore, BOA claims that this section, which was added by the Bankruptcy Reform Act of 1994, prevents the modification of residential mortgages in Chapter 11. This anti-modification provision provides that chapter 11 individual debtors are now subject to the same restrictions on modification of secured claims on a residence as in chapter 13. *In re Arns,* 372 B.R. 876, 881 (Bankr. N.D. Ill. 2007). <u>See</u> *11 U.S.C. § 1322(b)(2)*.

The Debtors argue that BOA and counsel had ample opportunity to review their loan documents and other pleadings filed in the case as BOA was timely served with a copy of the

---

[5] Since BOA is unable to satisfy the other requirements of Rule 60(b) as set forth in *Park Corp.,* the Court need not make a determination as to whether this Motion was timely filed. 812 F.2d at 896. BOA argues that the Motion is timely as the Debtors have not made a final distribution, not received their discharge, and not received a contract for the Residence that is less than what would be due to BOA on the notes secured by the two deeds of trust. However, the Court questions the timeliness of the Motion given that more than ten (10) months have passed between the filing of the Motion and the entry of the Confirmation Order. In addition, the Confirmed Plan appears to have been substantially consummated as the Debtors have been timely complying with all other requirements of the Confirmed Plan, including remitting payments to BOA and other creditors. More than five (5) months have passed since the Debtors filed their motion to compel BOA to comply with the terms of the Confirmation Order.

[6] The Debtors listed the fair market value of the Residence at $1,063,000.00 in their Schedules and reduced that amount to $1,000,000.00 in their Proposed Plan. The payoff on the first deed of trust held by BOA is $977,918.36.

Proposed Plan and, in fact, filed an objection as well as balloted against the proposed treatment. BOA through its counsel chose to actively negotiate with counsel for the Debtors and enter a consent order modifying its secured claims as to the Residence and then voluntarily withdrew its objection to the Proposed Plan. According to the Bankruptcy Administrator, the feasibility of the Proposed Plan was dependent upon the agreed terms in the Consent Order, which terms were incorporated into the Confirmation Order. As a result of this reliance on the agreed terms between the Debtors and BOA, BOA should be held to the terms of the negotiated agreement.

Case law on the impact of 1994 changes to 11 U.S.C. § 1123(b)(5) is scarce presumably because, if the secured claims are modified, such would be under a negotiated agreement with the secured creditor and therefore, would not be the subject of a dispute before a court.[7] In 2007, the Bankruptcy Court for the Northern District of Illinois considered whether a provision of the confirmed chapter 11 plan which modified the claim of a secured creditor whose security interest was secured by the debtor's residence was valid. *In re Arns*, 372 B.R. 768 (N.D. Ill. 2007). Although that court looked at modification of a creditor's claim as to the residence and additional security, such as rents and profits, the court stated:

> Moreover, even if the security interest had been initially protected by the anti-modification provision in § 1123(b)(5), the Plan actually modified LaSalle Bank's rights because LaSalle Bank waived those rights by agreeing to the Plan and by its own conduct in not pursuing its objection. *See In re Dominque, No. 02-050776-BKC-LMI, 369 B.R. 913, 2007 Bankr. LEXIS 1693, 2007 WL 1430686, at *7-8 (Bankr. D.D. Fla. May 14, 2007)*(stating that although the lender was

---

[7] In order to comply with 11 U.S.C. § 1123(b)(5), a debtor may not modify the claim of a creditor who holds a secured claim against only the residence of the debtor. However, if a debtor attempts to modify such a claim through a plan of reorganization, such plan could not be confirmed over the objection of the secured creditor.

11

> protected from an alteration of its rights by the debtors' plan under §
> 1322(b)(2), it could waive those rights by its own conduct).

*In re Arns*, 372 B.R. at 882.

The *Arns* Court went on to hold that even if LaSalle Bank's security interest was initially protected by the anti-modification provision provided in Section 1123(b)(5), LaSalle Bank made a clear and distinct manifestation of its intent to waive its rights under Section 1123(b)(5). *Id*. at 883. Although counsel for BOA did not acknowledge that she was aware that BOA's treatment was being modified pursuant to the Proposed Plan, the Court finds that there was enough constructive notice to have provided BOA with the imputed knowledge that the Debtors were attempting to modify its claim both as described in the Proposed Plan and as a result of the Consent Order. The documents filed in this case are sufficient to have put BOA on notice that it held more than one deed of trust in connection with the Residence. Consequently, BOA had notice of its proposed treatment with respect to its claims secured only by the Residence and that its proposed treatment was in conflict with the anti-modification provision. Furthermore, by negotiating with the Debtors and entering into a Consent Order, as well as, withdrawing its Objection to Confirmation, BOA affirmatively agreed to accept its treatment and modify its rights irrespective of the anti-modification provision.[8]

Lastly, BOA asserts that reinstatement of its second deed of trust through a modification of the Confirmation Order would not unfairly prejudice other creditors or the Debtors. The Court finds

---

[8] However, this holding does not mean that a chapter 11 debtor can modify a secured creditor's claim against his residence in conflict with Section 1123(b)(5). The finding here is limited to permitting modification of rights only with the consent of the secured creditor whose claim is being modified. If a debtor attempts to modify such a claim through a plan of reorganization, without the consent of the creditor, such plan could not be confirmed whether or not there was an objection by the secured creditor. In that case, the plan would not be in compliance with Section 1129(a)(1) and (a)(2) of the Bankruptcy Code.

12

this argument unpersuasive. Houseman, an unsecured creditor, in its response stated that it relied upon the terms of the Confirmed Plan in determining its litigation strategy in connection with its proof of claim. Houseman believed that there would be equity in the Residence and, therefore, believed that Houseman would get better dividends through a confirmed plan than through any settlement proposed by the Debtors. As a result of the possible equity that could be available to unsecured creditors upon liquidation of the Residence, Houseman chose to litigate its claim as part of a full evidentiary hearing. Houseman incurred litigation costs and expenses in connection with that hearing in direct reliance of the proposed distributions set forth in the Confirmed Plan.

At the hearing, BOA, in an effort to resolve the Houseman Objection and propose a resolution acceptable to all parties, informed the Court that it was willing to provide an immediate distribution of the full amount due to unsecured creditors as provided for in the Confirmed Plan. In addition, BOA offered to waive the first year of payments that would have been due and owing by the Debtors in connection with the second deed of trust, thus making the Debtors current on the second obligation to BOA.

Counsel for Houseman admitted that his client would favor immediate full plan payment to the general unsecured class, as opposed to receipt of payments under the terms of the Confirmed Plan, which provided for a staggered payout schedule. However, counsel for Houseman stated that under this new proposal by BOA, his client would be prejudiced by modification of the Confirmation Order which would reinstate the second deed of trust, thereby eliminating any potential equity that might be available to unsecured creditors, if the case were converted to chapter 7.

The Court commends the effort of BOA to resolve the objections to its Motion. However, Houseman is not the only party that the Court must consider. The Debtors would be severely prejudiced by the reimposition of the second deed of trust.

BOA may initially sound generous by offering to bring the Debtors current with respect to the second deed of trust. However, the Consent Order, incorporated into the Confirmation Order, provided that the amount due to BOA under Class 4 was the unpaid principal balance of $977,918.36, with interest to accrue at 6.5% and amortized for repayment over 30 years. The Debtors relied on the agreement with BOA and the feasibility of the Proposed Plan was dependent on resolution of the Objection to Confirmation filed by BOA. The Debtors have remained current under the Confirmed Plan. It is unlikely that the Debtors would be able to maintain regular monthly payments if they added in a monthly payment based on a thirty (30) year amortization of a $368,000.00 obligation at 6.5% interest, even if the staggered unsecured payments were no longer required.

The Bankruptcy Administrator, who relied on the terms of the Consent Order with BOA and the withdrawal of BOA's Objection to Confirmation, negotiated an increased percentage and longer distribution schedule for unsecured creditors in Class 8 with counsel for the Debtors just prior to the Confirmation Hearing. The agreement between the Debtors and the Bankruptcy Administrator was based on the disposable monthly income of the Debtors, the potential equity in the Residence, and the resulting feasibility of the Proposed Plan.

In addition to impacting feasibility of the Confirmed Plan, the inclusion of this second obligation would impact the liquidation test as there would be no equity in the Residence that could

be distributed to unsecured creditors upon conversion to chapter 7 or a modified chapter 11 plan of liquidation.

Therefore, BOA has not satisfied the Fourth Circuit requirements for the Court to consider whether it should modify or amend the Confirmation Order under Federal Rule 60(b). *See Park Corp.*, 812 F.2d 894. BOA lacks a meritorious defense and granting BOA relief would prejudice the opposing party.[9]

Therefore, based on the foregoing, the Motion for Relief from Order Confirming Plan filed by Bank of America, N.A. is **DENIED**. An Order Compelling Bank of America, N.A. to comply with the terms of the Confirmation Order has been previously entered by this Court.

**SO ORDERED.**

**END OF DOCUMENT**

---

[9] The Court notes that even if BOA had satisfied the requirements set forth in *Park Corp.*, BOA would not be entitled to relief under Federal Rule 60(b). 812 F.2d 894. BOA alleged that its neglect was excusable neglect which would entitle it to relief under Rule 60(b). The Court is hard pressed to see how the neglect was excusable. BOA, with the assistance of counsel, made a deliberate choice to enter into the Consent Order and withdraw its Objection to Confirmation. BOA was in possession of the documents and information to review and apparently neglected to do so. The Debtors disclosed the existence of the second deed of trust in the Schedules and Proposed Plan. The extensive procedural history at the beginning of this opinion evidences the candor of the Debtors in disclosing their obligations to BOA. Angel Gordon, counsel for BOA, testified that BOA was not timely in providing her with documentation that related to the second deed of trust. Such failure of BOA to timely provide its attorney with documentation and payoff information is not excusable neglect.